People of the State of Illinois, I believe, I here at the Inuit, be Kurtis C. Appellant by Laurel Spine. Ms. Spine? May it please the Court, Your Honors, my name is Laurel Spine. Mr. Venedig. Laurel Spine from Illinois Guardianship and Advocacy Commission, Legal Advocacy Service Division on behalf of Mr. Kurtis C. This matter started with a pro forma petition that failed to state the cause of action, followed by the trial court questioning someone other than Kurtis C. to determine whether Kurtis could make a legal decision about his right to waive counsel. I would suggest that the straightforward issue here is the failure to state a cause of action in the petition because there are no facts alleged to support a cause of action for involuntary medication pursuant to the Mental Health Code statute. Another issue here is the waiver of counsel issue. The trial court cannot question someone other than the respondent for this purpose. The right to counsel in an involuntary mental health proceeding is the respondent's right. So here that right belonged to Kurtis C. And he must be questioned because only he could waive that right. The doctor can't waive that right. What's important to this issue also is that the Illinois Supreme Court recognizes that even recipients of mental health services and respondents in mental health proceedings are presumed competent to make decisions about their own legal affairs. There is no clinical or expert opinion that's needed. This is according to the Phyllis P. case, by the way, the Supreme Court's Phyllis P. case. The Supreme Court recognizes that mental illness alone does not deprive mental health recipients of their right to make their own legal decisions. Now the provision in the Mental Health Code is Section 3-805. And what that section says is that a hearing shall not proceed when a respondent is not represented by counsel unless, after conferring with counsel, the respondent requests to represent himself and the court is satisfied that the respondent has the capacity to waive that right to counsel. The case law interpreting this section, or dealing with this issue, provides that, at the very least, the trial court should ask a few questions of the respondent to determine whether he has the capacity to waive counsel. And here are some examples of those few questions. Do you have a basic understanding of what the hearing is about? Do you have a basic understanding of the role of counsel? Do you have an understanding of the consequences of waiving counsel and what the outcome of the hearing could be? And these are questions from the Michael F., the Denby case, and the Dennis D. cases. If the respondent can answer those questions correctly, then the case law indicates that the person has the capacity to waive their legal right to counsel. And this is not about legal ability. This is not about how well the respondent can do in representing himself, but does the respondent have that understanding? The case law also provides that if there is indication in the record that the respondent had the capacity to make this legal decision, that's another point in the respondent's favor, that the court should permit the respondent to waive counsel. Or I guess the opposite is true, too. If the respondent was not permitted to waive counsel, but the conduct at trial shows that the respondent had the capacity to make that legal decision, then the trial court was wrong to not allow the person to waive counsel. I'm sorry about all these double negatives, but I hope that's okay. In this particular case, Curtis' conduct at the hearing points to the conclusion that he did have the capacity to make legal decisions for himself, and I would ask the court to consider the exchange at the end of the hearing with the trial court where Curtis asked a number of pointed questions about appealing, the mechanics of appealing, essentially whether the order could be stayed pending appeal, and what would happen if he refused medication while there was that appeal pending. Would he be restrained? I think the words he used were, will I be taken down and have medication forced on me while this appeal is pending? And then after that exchange, on that same day, Curtis hand wrote his own notice of appeal and filed that by mail, and that's included in the record, and it's also included in the appendix to the appellant's opening brief. Additional points that go to Curtis' capacity to make a legal decision for himself are these. There was no ongoing relationship between Curtis and the particular trial judge. Some of the cases provide that if a person is returning for maybe a petition for discharge after they had been previously found subject to involuntary commitment, the trial judge already has a relationship with that person and would have some knowledge of their ability and capacity to make a legal decision. Here we didn't have any kind of existing relationship between the trial court and Curtis C. And same with the doctor who was questioned here. The doctor gave his general opinion that the respondent didn't understand what was going on, but there was no ongoing relationship between Curtis and that doctor who testified. Additionally, there was no disruption at trial. The cases on this issue also note that when there is no disruption at trial, that also shows that the person is behaving appropriately and has some understanding of what's going on in court. And of course, as I said before, he asked those good and pertinent questions about how to go about appealing the trial court's decision. Even if there are circumstances where somebody else would be asked to testify about a respondent's capacity to waive counsel, to supplement the respondent's testimony or the respondent's answers to the court's questions, here the state did not even ask the right questions to allow the court to figure out Curtis' capacity to waive counsel. And what was elicited was just the doctor's general opinion. And it was not based on any particular facts. I would like to turn to just the capacity issue briefly. The respondent here was treated by the hospital as a person with capacity. The hospital accepted his consent to voluntary admission. The respondent, according to the record, he had signed what we nickname a five-day request of a voluntary patient for discharge. It's referred to as a five-day request because then the hospital has five business days to either discharge the person or file a petition for involuntary commitment if they meet criteria. So he was admitted as a voluntary. He consented to voluntary admission. He then later exercised his right to sign a written request for discharge, a five-day. We also have other evidence of his capacity. He had insight into his illness and explained his diagnosis. And I know that he was not... Well, the trial court said that he was articulate. But reading his testimony, you have to realize that this is maybe a person who is nervous about being in court. He was talking about the difference between a diagnosis of bipolar disorder and schizophrenia and schizoaffective disorder. And these are all diagnoses in the Diagnostica Statistical Manual. So he talked about his diagnosis and what he had been diagnosed with over the years. And then he talked about the medication he had taken and explained that he was on certain medications at certain points in time and explained that he was no longer on medications because the doctor stopped his medication. So this is somebody who was working with a doctor. He said, I'm no longer taking these medications. I was stopped on those medications. And at one point in the record, he had mentioned that it felt good to be off the medication. So this is somebody who had insight into his illness and diagnosis, was able to talk about the medications he'd been on, why they had stopped, how he felt. And there were no questions whatsoever about that final Israel factor, which is the interfering pathological beliefs or emotional states. So the doctor wasn't even asked a question to that effect. So I would argue that similar to this court's decision in ALACA-W, the capacity issue weighs strongly in favor of courtesy in this case. Finally, I would just suggest that if this court affirms the trial court, it will send a message that it's okay to handle involuntary mental health court proceedings in this more nonchalant manner. So on behalf of courtesy, we're asking this court to reverse the trial court's involuntary medication order here on one or more of the issues raised. Thank you. Thank you, Ms. Spahn. Mr. Renatovich? May it please the court, counsel. In this particular mental health case, the state is sensitive to the issues that are involved. I mean, we realize trying to take in forced medication upon someone, we realize the rights and the protections that the statute is affording the patient. I take issue with counsel's final statement that this case was treated in a nonchalant fashion. Counsel here suggests that the trial judge should have asked four or five questions. Somewhat, I guess, if you want to analogize it to something, I guess, and I took a look at this just to make sure I wasn't too far off base, was Rule 402. In the criminal side, when you're waiving counsel, there are certain questions, certain things you have to admonish the defendant about. And counsel's statements here about what some of the cases say kind of draft off of that. The problem here is with Section 3-805. It simply provides that an individual has a right to counsel unless after conferring with counsel, they make a request to represent themselves. So in this case, we have satisfaction of the first two components. There was counsel presented, there was a hearing being held, counsel was present, and after consultation, the respondent asked, I want to represent myself. The difficult part here is that in addition to just asking, the court has to be satisfied that the respondent here has the capacity to make an informed decision regarding what they're doing, i.e., waiving counsel. I kind of look at this statute as kind of a catch-22. It's a catch-22 because you're a trial judge, and you have yourself a person alleged to be incompetent that somebody wants to take and give medication to. The person is refusing that. And you have to make a decision as to whether or not this individual is competent enough, has the capacity enough to not only understand where counsel's coming in, but how counsel's going to fit into exactly what somebody else is going to want to do to this person. And so it's a kind of a combination. It's just not a simple question of, oh, yeah, I know, you're an attorney, and you're supposed to represent me, and I know I'm here in a hearing because I already know, because I already told the doctor, I'm not taking your meds. I'll see you in court. So he already knows where things are going. It's not that this respondent is not intelligent and doesn't necessarily know completely, totally has no idea what's going on. But the point is, does he have the capacity to understand counsel's role? Does he have the capacity to take and make an informed decision? Well, we haven't seen that. But the issue is, why wouldn't he ask him what he knows? In essence, Dr. Singh is his adversary, right? As far as this guy's concerned, he's coming in here, I want to medicate this guy. And he says, I don't want the medication. I want to waive counsel. Well, gee, Mr. Adversary, is he competent to waive counsel? No. Okay. Get out of here. Well, I understand what you're saying. The thing is, in this particular situation, okay, you're kind of asking the individual whether or not he's competent enough to know whether or not he wants to waive counsel without knowing anything about him. And I think to a certain extent, I think this is where the hearing went. This is why the trial judge had this hearing, to try to find out a little bit more about where is this individual? Where is this individual in this process? Because if I'm going to let him waive counsel, I want to know something about him. Now, am I saying that the trial judge shouldn't have said anything to him? Of course not. Would it have been better? Lord, I wish the record she would have. Okay. But the thing is, It doesn't make it reversible because it wasn't asked individually of this guy. This is what I'm talking about. I don't think it's necessarily reversible because of that. Because in trying to take and make this determination, I think the trial judge should have an overall picture of the individual, which I think includes this. And as I kind of phrase it in my brief, if the respondent is incapable of understanding the nature of the proceedings, how then can you, how then, why as a trial judge, would you allow this person to, if they don't really understand the nature, what's going on, what's the problem, why are you going to allow the one advocate that's going to be able to speak for this person to protect his rights to be dismissed? But your question presumes, if so facto, that the guy is not capable of doing it. And, of course, we can't reverse the order. The order's moved. We've got to move this exception issue. So what happens next time? What's going to happen prospectively? And give me one argument that says when he wants to waive counsel, one logical argument that says you don't ask that person, the respondent, you don't ask him any questions, him or her, about what they know and what they understand. One argument that says that's a good idea. I don't have a good argument that says that that's a bad idea. I think that in its totality, as I said, would it have been better had she done it? Of course. But at the same time, even if, we'll assume for the sake of argument, even if she had asked those questions, okay, as proposed here, and the respondent here says, well, counsel's this, counsel's that, I know this, that. But if he doesn't really truly understand what's going on, doesn't understand, and I do take issue with a lot of what counsel said about his ability to understand what was going on with him and his explanations, which basically most everything he said was extremely superficial at best. Well, how do we know what he understood? Because nobody asked him. Well, the thing is when we go to the hearing, we find out what he understood. Not so much about counsel. With respect to counsel, that's what the first issue is about. So let's deal with the issue. Okay. How can we know what he knew? Nobody asked him. But what I'm getting to is if we assume for the sake of argument that he would have answered those questions, what everybody here would consider to be appropriate, and the state put on the evidence for the doctor, the doctor doesn't really know what's going on. He doesn't really have the capacity to understand. Is the fact that we're going to send a message, the fact that if he answers the questions, happens to answer them correctly, that... That's not this case. That's not this case at all. I mean, that's a different case. Well, the thing is we're talking about sending messages. No, no, we're talking about this case and whether or not there was a requirement that there be a dialogue with this respondent. Right. And much of your argument is, well, assume if he answered all these questions this way and then the doctor says the same thing, would you be reversing the decision then? Maybe not. Maybe yes, maybe no. That's not this case. No, no. You know, that's not this case. This case is asking the doctor and getting information that's required. The doctor gave information the trial judge is mandated to get. That's on one side. He got information he's supposed to get, the judge. That would be correct. Okay, from the doctor. From the doctor. But nothing from the respondent. Nothing from the respondent. And you look at some of this language in these cases. I mean, there's nothing. There's nothing there from the respondent. No. So we can't assume anything. No. You know, can we assume that he would have done a great job? Can we assume he would have done a horrible job? That's a different case. We've got blank. What's the responses from the respondent? Blank. You have no responses from respondent as to his understanding of counsel, as to anything along those lines. To any inquiry the trial judge is supposed to make. Absolutely nothing. Yeah. Any aspect of the inquiry the trial judge is supposed to make, this trial judge did not do it. That would be correct. I mean, it's not your fault. You're stuck with this one. No, no. But the thing is, I guess, when I look at what the statute says, and there's no really, I mean, a lot of the case law does provide for the fact of, you know, well, you know, in most cases what's going to happen is, in some of the bad cases, the trial judge might take and say, you know, something, a very general question. And the courts have said, well, you really need to take and go on. You should ask some other questions. And they all talk about the dialogue. The problem is the statute simply says that the court has to be satisfied. How you do that, I guess, is the open question here. Because the statute doesn't say how you do that. Now, I realize one can take and easily say, well, the logical thing to do is to ask the individual. But then again, too, if you're asking an individual, and excuse my terminology because I can't think of anything off the top of my head, but if you're asking an incompetent, someone who is mentally ill, and I know. But the Supreme Court has said they're not presumed incompetent. And that's a problem. Oh, no, I'm not presuming. I'll give you your turn when I'm done with the problem. Okay. And what the statute says and what the Supreme Court says, that's what the hearing's about, is to presume what is incompetent. Your argument presumes that he's incompetent, so why ask him any questions? And that's what I'm hearing out of you is, well, why would you ask an incompetent whether they're competent to handle their legal affairs? Well, that's what the hearing's about, not a presumption before you start that the person's incompetent to handle their legal affairs. And the Supreme Court said that ain't the law. I'm not presuming that, in this case, that the individual's incompetent. That's what the hearing was all about. The hearing wasn't so much to determine, at this point, whether he was incompetent, i.e., mentally incompetent. The hearing was to determine whether or not he had a capacity to make the informed decision. I'm not assuming anything. What eventually happened is, after the hearing, the trial judge made that finding that he lacked the capacity. Now, what I'm hearing from the court is, I'm not hearing from the court necessarily that the hearing was necessarily a bad thing. What I'm hearing from the court is the trial judge here, besides having this hearing, should have asked the individual some additional questions. Well, not additional questions. He didn't answer any questions. I'm sorry, I said additional. What I'm saying, should have asked questions, should have additionally asked questions is what I'm saying. I mean, I would put it a different way. The question is, can we, in part, can we say an effective determination that has to be made whether or not you're competent to waive counsel and whether he can represent himself is, can you have that determination without ever asking one question to the respondent? Is that okay? Can you just ask the doctor who's, as Justice Schmidt said, on the other side, is that good enough? Because the questions asked of that doctor were appropriate questions. But can you do that, have that hearing, without ever asking one question to the respondent in trying to make the determination? And the cases, there are a lot of cases that talk about asking the respondent questions. And they should do this, should do that, ask this, ask that. And that's cases where they say, well, there was a sufficient inquiry. We've got nothing here. So this would be, wouldn't this be the first case, if we approve this, to say that it's okay to make the sufficient inquiry as required by the section of the statute without ever asking the respondent a thing? It would be the first case. That would be, that would be the first case. And that's what you're urging us to do. That's what I'm urging. I mean, isn't that the essence of it? In essence, that is correct. And I don't mean to necessarily, if you will, put the cart before the horse. But, again, when I look at this hearing and I look at what the statute says and I look at what they're trying to accomplish, yes, there are no questions that have been asked. But in my mind, when I looked at this and come up with the argument and try to find out if I had to confess error or not or if I had an argument, I said, if I look at this hearing and I look at what was testified to and I even if they had asked the questions and even if all the correct responses had been given by the individual, would this decision have been correct? That doesn't matter. Because we're talking about going forward because we're not, we can't reverse that order in a sense. We can't do it. So we're talking about what are we going to do from this point forward? And, by the way, where's the evidence in the record that the doctor who said he's not competent to waive his legal, has any legal knowledge as far as what this guy needs to know legally to, he's not a lawyer, he's a doctor, and what he knows about what this guy needs to do to competently counsel or? Well, that I can't answer. I understand where you're coming from. Other than the fact that if a person is unable to understand what's going on, to a large extent I think probably a lot what the trial judge did in this case as well as, and I don't know this for a fact, I'm just surmising obviously, is the fact that if I was in this judge's position I would want to, or to me on the side of caution, I guess if I was a trial judge and I was going to be reversed in this case, I'd sooner be reversed denying the request and having counsel there to protect the interests and the rights of this individual after hearing this evidence. I said that's just me. Now whether or not that answers your question, whether or not that's something that you want to set as a precedent, again, that's just me. That's an opposite mix with, and Justice Schmidt has pointed out, the proposition that a person is presumed to be competent to represent himself. Well, the person is presumed to be. Because when you do it, when you suggest what you're suggesting, it's the opposite assumption. I guess with all due respect, I have a hard time seeing that because if you're going into a hearing and the presumption is the person is competent, the trial judge said, well, I'm presuming this person is competent, I'm presuming this person knows what's going on, I want to hear some countervailing evidence that they can find out if indeed that presumption is valid. And when the evidence is now heard and it is refuted by the evidence, to the judge's satisfaction, and she has to exercise her discretion, then at that point, now, at that point, should she maybe have asked? But again, if you're making the presumption that he is capable of doing that, if he answers the questions correctly, then you still come down to the question. You still come down to the bottom line. Afterwards, I got his statements, I got this evidence. What do I do? Thank you. So the state would find this offensive if at a hearing, to determine whether somebody is competent to waive counsel, the judge is required to talk to that person and ask them some questions. Because that's what this is all about. Well, that's what it's all about. I don't find it offensive. And I realize the difficulty, let me say the difficulty with this case in the court, because making a decision in this case is going to resound down the road. Okay? I get that. So will the walls fall down? Of course not. Of course not. But then again, too, in this case, can you take and say that, because the trial judge in this case did not ask these questions, period, end of conversation, therefore, it's automatically reversible error. And I guess that's, I don't know if I'm now trying to espouse a harmless error argument of what happened here. I did not argue in my brief. Well, it doesn't matter because medicine has been administered. Yeah, I know. And this is. . . Who is the doctor a witness for? The doctor is going to be a witness for the state. Well, the doctor is actually the petitioner. I said the petitioner, but the one seeking to take and have the medicine administered. It would be sort of an unusual aspect to have a principle of law that we're going to make a determination without ever asking one side, we just ask the one that's on the other side. Again, I know. . . It's sort of a. . . Gosh, no, I understand pretty well what you're saying, you know. It's just that. . . That's going to be an interesting concept in due process. In the abstract, I understand what you're saying. What I kind of look at here a little bit is the fact that in this case, even though Dr. Singh only has seen this patient for two days, he's able to take, because of his expertise, able to take and form an opinion, able to take and give his expertise of what I don't know. I'm a lawyer. I'm not a psychiatrist. I have no idea. He's able to give an opinion on something like this. Okay. Give the trial judge more background, more knowledge than what a trial judge is going to be able to deduce in five or six questions in talking with somebody within five minutes. Why do we even need to talk about that? I don't know. I mean, but. . . What do you mean? Why is that a truism? That he can't learn more from talking to the individual about what he knows about the hearing as opposed to talking to some psychiatrist who's also not a lawyer? Because. . . You said that as though it was some kind of universal truism. Well. . . That he can learn more from talking to a psychiatrist. I would certainly. . . Don't you think you'll take. . . Don't you think you'll learn more about what's going on in a person's mind from someone who is educated in that particular profession than simply getting potentially rote responses from an individual who just happens to know. . . Well, I know what an attorney is. Well, think of that argument, because think of the psychiatrist in 1950 who had certain assumptions that are rejected today. You could say, don't you think that psychiatrist with these Freudian theories in 1950 knew a lot more than anybody else? We reject that today. That would be true, but it's no different in the same way even with a lot of things that we do with the law, things that we thought were proper way back when the 50s are improper today. And it's just what we deal with at the moment, and that's all that I'm trying to do is deal with what we've got at the moment. You've handled enough criminal cases. You bring six psychiatrists in to say one thing about the guy, what he's capable of doing mentally, and the other side brings in eight that says just the opposite. Come on. Well, I understand, but again, that's not what we've got here, and we don't really have anything. . . And again, I'm sorry. . . I'm not saying not to take and ask the questions like that. It's just that with this particular case, under these circumstances, I think the trial judge did what he thought was proper. Okay. Thank you very much. Thank you. Ms. Spahn, any rebuttals? No rebuttals, no. All right. Thank you both for your argument today. We'll take this matter under advisement and get back to you with a written decision in a short bit. And I will adjourn the January call.